OPINION OF THE COURT
 

 Ciparick, J.
 

 Two questions are central to this appeal. First, was there legally sufficient evidence that the house defendant entered unlawfully was a dwelling within the meaning of Penal Law § 140.25 (2) when its sole occupant had passed away three days prior to the entry? Second, was defendant entitled to an instruction on the lesser included offense of third degree burglary? We conclude that the evidence was legally sufficient, and that defendant was not entitled to the chargedown.
 

 On August 21, 1999, the only occupant of the subject premises died in a motorcycle accident. Aware of the death and that decedent kept marijuana in the house, defendant entered the house through an unlocked door and proceeded to search for the drugs. Unable to locate the marijuana, defendant began to gather other property found in the house when the police, summoned by a neighbor, came and arrested him. At the time, the utilities were still connected and the house was furnished. Although the house was owned by decedent’s mother, she maintained a separate residence and had no intention of moving in. After her son’s death and prior to the burglary she had
 
 *370
 
 given a key to her son’s friend so that he could take care of the premises.
 

 Defendant was indicted for second degree burglary and attempted petit larceny. At trial, the court denied defendant’s request to submit the lesser included offenses of burglary in the third degree or criminal trespass in the third degree to the jury, and denied defendant’s motion to dismiss the charge of second degree burglary on the ground of insufficient evidence. Defendant was subsequently convicted of burglary in the second degree and attempted petit larceny.
 

 A divided Appellate Division affirmed the conviction, holding that “a consideration of all the relevant factors supports the conclusion that the dwelling retained its character as such based upon its immediate past residential use” (294 AD2d 811, 813 [2002], citing
 
 State v Edwards,
 
 589 NW2d 807 [Minn 1999],
 
 review denied
 
 1999 Minn LEXIS 301). Two Justices dissented and would have reduced the conviction to burglary in the third degree, contending that upon the death of its sole occupant, the building at issue “lost its character as a dwelling within the meaning of Penal Law § 140.00 (3)” (294 AD2d at 813). One of the dissenting Justices granted leave to appeal to this Court, and we now affirm.
 

 I.
 

 At common law the crime of burglary consisted exclusively of breaking into a dwelling-place at night
 
 (see Quinn v People,
 
 71 NY 561 [1878];
 
 see also People v Quattlebaum,
 
 91 NY2d 744 [1998]). Burglary of a dwelling at night involved not only great alarm to its occupants but also increased likelihood of injury to an occupant attempting to defend hearth and home. Early revisions of the Penal Law recognized varying degrees of burglary and assigned the greater culpability for entering a dwelling at night where a person could be found because of the greater risk of harm associated with such an entry.
 

 Under our current penal statute, a person commits burglary in the second degree when he or she knowingly enters a building with the intent to commit a crime and where factors tending to increase the likelihood of physical injury are present
 
 (see
 
 Penal Law § 140.25 [1]) or, as relevant here, the building is a dwelling
 
 (see
 
 Penal Law § 140.25 [2]). A “dwelling” is defined as “a building which is usually occupied by a person lodging therein at night” (Penal Law § 140.00 [3]).
 

 Proof at trial established that the structure was a one-family residence that was fully furnished with working utili
 
 *371
 
 ties and could have been occupied overnight. Decedent’s property was still in the house, including food in the refrigerator. Further, it is undisputed that the house was ordinarily occupied overnight by the decedent before his death. Viewing this evidence in a light most favorable to the People, it is clear that there is a valid line of reasoning by which the jury could have concluded that the house was “usually occupied by a person lodging therein at night.”
 

 II.
 

 Defendant also argues that the Trial Judge erred by failing to charge the lesser included offense of burglary in the third degree. A person commits burglary in the third degree when he or she “knowingly enters or remains unlawfully in a building with intent to commit a crime therein” (Penal Law § 140.20).
 

 There is a two-part test to determine whether a lesser included offense charge should be submitted to a jury
 
 (see People v Van Norstrand,
 
 85 NY2d 131, 135 [1995]). The defendant must first prove that it is impossible to commit the greater crime without necessarily committing the lesser and there must be a reasonable view of the evidence which would support a finding that the defendant committed only the lesser offense.
 

 Here, the first part of the test is met because one cannot commit burglary in the second degree
 
 (see
 
 Penal Law § 140.25)
 
 [1]
 
 without also committing burglary in the third degree
 
 (see
 
 Penal Law § 140.20).
 
 [2]
 

 Defendant does not meet the second prong of the test because no reasonable view of the evidence would support a finding of burglary in the third degree without a finding of second degree burglary. The sole distinction between Penal Law § 140.20 and Penal Law § 140.25 (2), of which defendant was convicted, is that the subject building must also be a dwelling. The statute provides that a dwelling is a building usually occupied by a person lodging therein at night (Penal Law § 140.00 [3]). By using the phrase “usually occupied” to
 
 *372
 
 define dwelling, the Legislature clearly intended to enact a flexible standard.
 

 As the trial court demonstrated, the correct approach in deciding whether to grant a chargedown is to consider, in light of the statutory language, all of the surrounding facts and circumstances in determining whether or not a reasonable view of the evidence supports the conclusion that the building is “usually occupied by a person lodging therein at night” (Penal Law § 140.00 [3]). In doing so, courts must look to the “nature of the structure” and deteimine whether it was “normal and ordinary” that it was “used as a place for overnight lodging” and had “the customary indicia of a residence and its character or attributes” (Quattlebaum, 91 NY2d at 748).
 

 The courts have identified several factors that are pertinent when deciding whether it was “normal and ordinary” that a structure was occupied at night. In
 
 People v Sheirod
 
 (124 AD2d 14 [4th Dept 1987]) the Appellate Division considered whether a dwelling was “usually occupied” in a case where the inhabitants of a house were absent for one year. The Court identified as factors relevant to determining whether an absence is temporary, causing a building to remain a dwelling: “(1) the nature of the structure, i.e., its adaptation at the time of the burglary to occupancy by a person * * *; (2) the intent of the owner to return * * * and (3) whether, on the date of the burglary, a person could have occupied the structure overnight”
 
 {Sheirod,
 
 124 AD2d at 17).
 
 [3]
 
 Applying these factors, the Court concluded that the house remained a dwelling because it was usually occupied and the owners were only temporarily absent.
 

 Defendant emphasizes the importance of the second
 
 Sheirod
 
 factor — the owner’s intent to return. However, the statutory language controls — that a building be “usually occupied by a person lodging therein at night.” It is not necessary that each
 
 Sheirod
 
 factor be present in every case. Immediate past use of the building and its lack of abandonment are also relevant factors to consider in determining whether a building is a dwelling within the statutory definition.
 

 
 *373
 
 Even viewing the evidence in a light most favorable to the defendant, it is clear that the structure in question was a furnished residence. It was suitable for human habitation and had been occupied three days prior to the burglary by the decedent. Thus, we conclude that there was no reasonable view of the evidence that the house was not a dwelling within the meaning of the Penal Law, and therefore the trial court properly refused to charge the lesser included offense.
 

 We refuse to adopt a rule that a house loses its character as a dwelling immediately upon the death of its sole occupant merely because there is no conclusive evidence that any other person intended to reside there. To do so would reduce the criminality of a burglar who, having knowledge of an occupant’s or homeowner’s death, would seek to exploit the situation, when the potential harm to persons — such as grieving friends and relatives — would still be present. The death of its sole occupant three days earlier did not, on its own, transform decedent’s house from a dwelling into a building for the purposes of the burglary statute.
 

 III.
 

 Finally, defendant submits that the trial court erred by refusing to accept his waiver of his right to be present during voir dire. After the first round of jury selection was complete and seven jurors had been selected, defense counsel stated, “I spoke with Mr. Barney. He would be willing to waive his presence at bench conferences.” The Judge replied, “I understand but we will keep him up there and have him take a look at things unless things get out of hand. You are entitled to be present and I generally don’t accept the waivers, so thank you.” There was no further objection or colloquy on the subject and defendant attended the questioning of four prospective jurors conducted in the jury room, outside the presence of the remaining panel without objection.
 

 Defendant argues that his attorney’s statement was an attempt to waive his right to be present at sidebar questioning of prospective jurors and that the Trial Judge’s refusal of the waiver was an abuse of discretion. However, defendant’s request to waive his presence at “bench conferences” was not sufficient to alert the court that he was seeking to be excluded from individual voir dire. Neither did counsel at any time argue before the trial court that the denial of defendant’s request to waive his right to be present at bench conferences was interfering with a trial strategy. As such, defendant has not presented
 
 *374
 
 a sufficient record to allow appellate review of this issue
 
 (see People v Kinchen,
 
 60 NY2d 772, 773-774 [1983]).
 

 Defendant’s remaining contentions are without merit. Accordingly, the order of the Appellate Division should be • affirmed.
 

 Chief Judge Kaye and Judges Smith, Wesley, Rosenblatt, Graffeo and Read concur.
 

 Order affirmed.
 

 [1]
 

 . “A person is guilty of burglary in the second degree when he knowingly enters or remains unlawfully in a building with intent to commit a crime therein, and when * * * 2. The building is a dwelling.” (Penal Law § 140.25 [2].)
 

 [2]
 

 . “A person is guilty of burglary in the third degree when he knowingly enters or remains unlawfully in a building with intent to commit a crime therein.” (Penal Law § 140.20.)
 

 [3]
 

 . In
 
 Quattlebaum,
 
 we applied the
 
 Sheirod
 
 factors and concluded that a school building with an office on the fifth floor containing a bed that was sometimes used for overnight stays was not a dwelling. It was not necessary to address each factor because the building did not have “the customary indicia of a residence and its character or attributes”
 
 (Quattlebaum,
 
 91 NY2d at 748).
 
 Quattlebaum
 
 also identified another factor — the frequency of the building’s use for overnight lodging — as relevant in determining whether a building is usually occupied within the meaning of the statute.